UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ORIENTAL MEDICAL SUPPLIES, INC., and<br>LHASA OMS, INC.<br><br>        Plaintiffs,<br><br>v.<br><br>ASIA-MED GMBH & CO., KG,<br>AM HOLDINGS, LLC, As General Partner of<br>ASIAMED PROFESSIONAL, LIMITED PARTNERSHIP,<br>AM HOLDINGS, LLC, KLAUS TEICHERT and<br>MICHAEL JOY,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO: 03-cv-12234 JLT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR INJUNCTIVE RELIEF**

**I. INTRODUCTION**

This is a case of theft of intellectual property. Defendant Michael Joy stole the domain names belonging to Lhasa OMS, Inc. ("Lhasa OMS"), which incorporate the trademarks of Lhasa OMS and Oriental Medical Services, Inc. ("OMS"). Defendant Michael Joy falsely told Lhasa OMS, his employer until September 17, 2003, that he had registered the domain names for Lhasa OMS. Instead, Defendant Asiamed Professional, LP ("Asiamed Professional"), a direct competitor of Lhasa OMS, registered the Lhasa OMS domain names immediately after Mr. Joy left his management position with Lhasa OMS to join Asiamed Professional. As a result of Defendants' theft of the domain names, Lhasa OMS cannot operate its new web-site, which Lhasa OMS expected to be the centerpiece of a new marketing campaign. Defendants must be ordered to forfeit and to transfer immediately the Lhasa OMS domain name registrations to Lhasa OMS. Mr. Joy also must be enjoined and restrained from further taking action to usurp the good will

{K0270884.1}

of Lhasa OMS by misappropriating the confidential and proprietary business information of Lhasa OMS and OMS obtained while Mr. Joy held a management position with Lhasa OMS.

## II. FACTS

### A. The Business of OMS and Lhasa OMS

OMS is in the business of the importation and wholesale sale of oriental medical supplies, including acupuncture needles, and other health related products. (Affidavit of Thomas Riihimaki ("Riihimaki Aff."), ¶ 2). Mr. Thomas Riihimaki ("Mr. Riihimaki") is the President and Chief Executive Officer of OMS. (Riihimaki Aff., ¶ 1). Mr. Riihimaki also assists his wife Kyung P. Riihimaki, who is the President and Chief Executive Officer of Lhasa OMS, with the operation of Lhasa OMS, Inc. ("Lhasa OMS"). (Riihimaki Aff., ¶ 3). Lhasa OMS was originally incorporated as Lhasa Medical, Inc. in February 1990. (Riihimaki Aff., ¶ 3). Lhasa Medical, Inc. officially changed its name to Lhasa OMS, Inc. on July 25, 2003. (Riihimaki Aff., ¶ 3). Lhasa OMS is engaged in the retail and wholesale sale of oriental medical supplies, particularly the Seirin brand acupuncture needles. (Riihimaki Aff., ¶ 4). In 2003, OMS reorganized its business. (Riihimaki Aff., ¶ 5). Lhasa OMS assumed responsibility for retail and wholesale sales of oriental medical supplies that had previously been undertaken by OMS, including the sale of acupuncture needles. (Riihimaki Aff., ¶ 5).

OMS has been using the mark "OMS" in connection with its oriental medical supply business since at least 1980, and has held United States trademark registration No. 2,280,353 since September 28, 1999. (Riihimaki Aff., ¶ 6; OMS trademark registration, attached as Exhibit "A" to Riihimaki Aff.). In July 2003, OMS licensed the right to use

its "OMS" mark to Lhasa OMS in connection with the Lhasa OMS name and corporate logo. (Riihimaki Aff., ¶ 7). Lhasa OMS and/or Lhasa Medical have used the "LHASA" mark in connection with its oriental medical supply business since, at least, January 24, 1990. (Riihimaki Aff., ¶ 8). On September 23, 2002, Lhasa OMS (then Lhasa Medical) filed an application for United States trademark registration, serial number 76/454047, for the mark "LHASA". (Riihimaki Aff., ¶ 8; "LHASA" trademark registration application, attached as Exhibit "B" to Riihimaki Aff.). Lhasa OMS has been using the term "LHASA OMS" in connection with its oriental medical supply business since July 2003. (Riihimaki Aff., ¶ 9). Lhasa OMS filed an application for United States trademark registration for "LHASA OMS" and for its logo on November 4, 2003. (Riihimaki Aff., ¶ 9; "LHASA OMS" trademark registration application, attached as Exhibit "C" to Riihimaki Aff.).

Defendant Michael Joy had been employed by Lhasa Medical or Lhasa OMS for ten (10) years when he suddenly resigned as Senior Manager of Lhasa OMS on September 17, 2003. (Riihimaki Aff., ¶ 10). Mr. Joy also had assisted with managing the operations of OMS. (Riihimaki Aff., ¶ 10). While employed in his management position, Mr. Joy had access to the most sensitive confidential and proprietary business information of Lhasa OMS and OMS. (Riihimaki Aff., ¶ 11). Mr. Joy was one of only four employees who held a password necessary to gain access to the computerized databases of the companies. (Riihimaki Aff., ¶ 11). The computerized databases stored confidential information regarding Lhasa OMS and OMS, including information concerning suppliers and customers, particularly vendor order specifications, pricing schedules, and specialized pricing schedules for master dealers. (Riihimaki Aff., ¶ 11).

Mr. Joy assisted in developing marketing plans, business development strategies, and product development and distribution efforts of Lhasa OMS and OMS. (Riihimaki Aff., ¶ 11). Mr. Joy attended trade shows to promote the products of Lhasa OMS and OMS, and interacted with customers and suppliers of Lhasa OMS and OMS products. (Riihimaki Aff., ¶ 11). In July 2003, Mr. Joy also assisted Mr. Riihimaki in preparing a patent application for a new acupuncture needle product jointly filed by Lhasa OMS and a leading Korean manufacturer with United States Patent and Trademark Office. (Riihimaki Aff., ¶ 11).

    B.    <u>Asia-Med Seeks to Enter the United States Acupuncture Market</u>

Asia-Med GMBH and Co., KG ("Asia-Med") is a competitor of Lhasa OMS in the oriental medical supply industry. (Riihimaki Aff., ¶ 13). Asia-Med manufactures and distributes acupuncture needles in Europe. Dr. Klaus Teichert is the President of Asia-Med. (Riihimaki Aff., ¶ 13). In November 2002, Dr. Teichert first approached Mr. Riihimaki and Mrs. Riihimaki and offered to acquire the business of OMS to permit Asia-Med to enter the United States market. (Riihimaki Aff., ¶ 14). OMS manages and controls the wholesale distribution for the Seirin brand of acupuncture needles in the United States, which are sold at retail and wholesale by Lhasa OMS. (Riihimaki Aff., ¶ 14).

During the course of negotiations between Asia-Med and OMS from February 2003 through June 2003, Dr. Teichert visited the offices of OMS in Weymouth, Massachusetts on a number of occasions, and met Mr. Joy. (Riihimaki Aff., ¶ 15). Mr. Joy was also aware of the status of the negotiations and discussions with Dr. Teichert. (Riihimaki Aff., ¶ 15). Dr. Teichert received confidential and proprietary business

information of OMS pursuant to a confidentiality agreement. (Riihimaki Aff., ¶ 16). Dr. Teichert also learned of the business plan to change the name of Lhasa Medical to Lhasa OMS, and of the planned promotional campaign to market Lhasa OMS. (Riihimaki Aff., ¶ 16).

During the course of negotiations regarding the acquisition of OMS, Dr. Teichert told Mr. Riihimaki that Asia-Med intended to take-over the United States distribution of the Seirin brand acupuncture needles. (Riihimaki Aff., ¶ 17). Dr. Teichert stated to Mr. Riihimaki, in words or in substance, that Asia-Med would directly target, harm, and take away OMS business unless OMS sold the business to Asia-Med. (Riihimaki Aff., ¶ 17). When OMS finally rejected the acquisition proposals in June 2003, Dr. Teichert was angry, and responded by stating he intended to weaken OMS and harm its business in the United States. (Riihimaki Aff., ¶ 17).

### C. Lhasa OMS Plans to Launch a Web-Site In Conjunction with its New Marketing Campaign

Commencing in the spring of 2003, Lhasa OMS undertook, at substantial expense, a campaign to promote sales of oriental medical supplies under the Lhasa OMS name. (Riihimaki Aff., ¶ 19). A central component of the Lhasa OMS sales and marketing campaign was the creation of a new web-site. (Riihimaki Aff., ¶ 20). On May 29, 2003, Mr. Riihimaki instructed Mr. Joy to register the domain names of www.lhasaoms.com and www.lhasaomsmedical.com on behalf of Lhasa OMS. (Riihimaki Aff., ¶ 20). On or about May 29, 2003, Mr. Joy told Mr. Riihimaki that he had registered the domain names as had requested. (Riihimaki Aff., ¶ 21). Mr. Joy handed Mr. Riihimaki a computer-generated document, and told Mr. Riihimaki that it was a copy of the on-line registration form confirming the registration of the domain

names. (Riihimaki Aff., ¶ 21; Exhibit "F"). Unknown to Lhasa OMS at the time, Mr. Joy's statements were false, and Mr. Joy did not register the domain names. (Riihimaki Aff., ¶ 23).

Lhasa OMS retained the services of a web-designer to develop the new web-site using the address www.lhasaoms.com for operation by the fall of 2003. (Riihimaki Aff., ¶ 22). Lhasa OMS also printed new catalogs and product order forms referring to the anticipated new web-site at www.lhasaoms.com. (Riihimaki Aff., ¶ 22; Exhibit "G"; Exhibit "H"). Lhasa OMS printed and mailed in excess of 10,000 catalogs to acupuncture practitioners in August, September, and October of 2003. (Riihimaki Aff., ¶ 22).

On September 17, 2003, Mr. Joy suddenly announced his resignation from Lhasa OMS. (Riihimaki Aff., ¶ 28). Mr. Joy said nothing about the domain names when he tendered his resignation letter. (Riihimaki Aff., ¶ 28). In his resignation letter, Mr. Joy stated that he would be working with AM Professional Supplies and Dr. Teichert, and that he had been considering leaving Lhasa OMS for "quite a while." (Riihimaki Aff., ¶ 28; Joy Resignation Letter, attached to Riihimaki Aff. at Exhibit "M").

D.   Dr. Teichert Establishes Asiamed Professional in Boston with Mr. Joy Serving As Director of Product Development

After Dr. Teichert failed in his efforts to acquire OMS, he established new companies with offices located in Boston to market and sell oriental medical supplies, including acupuncture needles, in the United States. (Riihimaki Aff., ¶ 24). Dr. Teichert, as Managing Director, established AM Holdings, LLC in Delaware on August 11, 2003, and registered to do business in Massachusetts on August 19, 2003. (Exhibit "K"). AM

{K0270884.1}

Holdings, as General Partner, formed AM Professional Supplies in Delaware on August 14, 2003, which was registered to conduct business in Massachusetts on August 20, 2003. (Exhibits "I" and "J"). AM Professional Supplies subsequently changed its name to Asiamed Professional, LP in Delaware on September 25, 2003, and in Massachusetts on September 30, 2003. (Exhibits "I" and "J").

Asiamed Professional competes directly with Lhasa OMS in the oriental medical supply industry. (Riihimaki Aff., ¶ 25). Asiamed Professional recently attended an acupuncture trade show focused on the United States market in San Diego, California, which Lhasa OMS also attended. (Riihimaki Aff., ¶ 25). Mr. Joy currently holds the position of Director of Business Development for Asiamed Professional in Boston. (Riihimaki Aff., ¶ 26; Asiamed Professional Business Cards, attached to Riihimaki Aff., at Exhibit "L"). William Eppich, another former Lhasa OMS assistant manager who was terminated in May 2003, is also currently employed by Asiamed Professional in Boston as Director of Sales. (Riihimaki Aff., ¶ 26; Exhibit "L").

### E. Lhasa OMS Discovers Its Domain Names Have Been Stolen

After Mr. Joy resigned, Lhasa OMS continued with its sales and marketing campaign, including developing the new web-site utilizing www.lhasaoms.com that Mr. Joy had purportedly registered in May of 2003. (Riihimaki Aff., ¶ 30). To date, Lhasa OMS has expended in excess of $16,000.00 to design its new web-site. (Riihimaki Aff., ¶ 30). On November 3, 2003, as Lhasa OMS was making final preparations to take the new web-site live, the web-site designer notified Mr. Riihimaki that the www.lhasaoms.com domain name was already taken by a registrant other than Lhasa OMS, and was not available for use as part of the new web-site. (Riihimaki Aff., ¶ 31).

Upon investigation, Mr. Riihimaki was astonished to learn that AM Professional Supplies was listed as the registrant of www.lhasaoms.com, www.lhasaoms.net, and www.lhasaoms.org. (Riihimaki Aff., ¶ 32; "Whosis" Reports Dated November 3, 2003 for Domain Name Registrations, attached at Exhibits "N", "O", and "P" to Riihimaki Aff.).[1]

Asiamed Professional currently controls the Lhasa OMS Domain Names. (Riihimaki Aff., ¶ 34). Because of the registration, Lhasa OMS cannot use the www.lhasaoms.com, .net, or .org domain names as part of its new web-site. (Riihimaki Aff., ¶ 34). The Lhasa OMS web-site, which was also to include links to the web-site of Lhasa Medical and OMS, is not operational as anticipated. (Riihimaki Aff., ¶ 34). Lhasa OMS customer service representatives have received complaints from customers that they are not able to access the Lhasa OMS web-site. (Riihimaki Aff., ¶ 34).

F.   Asiamed Professional Is Trading on the Goodwill of Lhasa OMS

Mr. Joy left Lhasa OMS with intricate knowledge of the marketing and sales strategies of Lhasa OMS and OMS, including vendors utilized by Lhasa OMS to purchase products for sale. (Riihimaki Aff., ¶¶ 11,35,36). Mr. Riihimaki recently learned that Asiamed Professional has contacted at least one existing vendor of Lhasa OMS, seeking to purchase oriental medical supply products used for retail sales to customers. (Riihimaki Aff., ¶ 35). Apparently, Mr. Joy has disclosed to Asiamed Professional the marketing and sales strategies of Lhasa OMS and OMS to permit Asiamed Professional to gain an unfair competitive advantage on Lhasa OMS. (Riihimaki Aff., ¶¶ 35,36).

---

[1] AM Professional Supplies did not change the contact information for the registration of the Lhasa OMS Domain Names to reflect the change in its name to Asiamed Professional.

{K0270884.1}

## III. ARGUMENT

The standard for issuance of an injunction is well known: (1) the moving party is likely to succeed on the merits; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) the injury to the moving party from not granting the injunction outweighs the harm to the non-moving party from granting it; and (4) the public interest will not be adversely affected. Aoude v. Mobil Oil Corp., 862 F. 2d 890, 892 (lst Cir. 1988); Planned Parenthood League of Massachusetts v. Bellotti, 641 F. 2d 1006, 1009 (lst Cir. 1981). These four factors are to be weighed together, so that an exceptionally strong showing of likelihood of success on the merits may justify injunctive relief with a slightly lesser showing of irreparable harm. See, e.g., Eatable Greentable Prods., Inc. v. Sweet Stop, Inc., 627 F. Supp. 777, 782 (D. Mass. 1986). The First Circuit has suggested that likelihood of success on the merits is the "critical factor" in the determination of whether to issue an injunction. See, e.g., Lancor v. Lebanon Hous. Auth., 760 F. 2d 361, 362 (lst Cir. 1985).

Furthermore, in light of the overwhelming evidence of outright theft and fraud presented here, Plaintiffs are entitled to a mandatory injunction requiring Defendants to return the domain names stolen from Lhasa OMS. Although the ultimate relief sought by Lhasa OMS, the return of the domain names to Lhasa OMS is necessary and just. On the facts presented, Lhasa OMS has met the heightened standard to prove the need to alter the *status quo*, and to permit Lhasa OMS to recover immediately its intellectual property. See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F. 3d 27, 33-34 (2d Cir. 1995).

A. <u>Plaintiffs Are Entitled to the Immediate Return of the Domain Names</u>

1. <u>Mr. Joy and Asiamed Professional stole the Lhasa OMS domain names</u>

The facts proving theft and conversion of the Lhasa OMS domain names are irrefutable. On March 29, 2003, Mr. Riihimaki instructed Mr. Joy, Senior Manager of Lhasa OMS, to register the www.lhasaoms.com domain name.[2] Mr. Riihimaki gave Mr. Joy his credit card to register the name. Mr. Joy went to the on-line service, and typed in the information to register the domain name as requested. Mr. Joy completed in all of the necessary information, but apparently stopped short of sending the registration request. Instead, Mr. Joy printed the information he had entered as displayed on his computer screen. Mr. Joy handed the printed documentation to Mr. Riihimaki. Mr. Joy expressly told Mr. Riihimaki that he had completed the registration.

In truth, Mr. Joy did not register the domain name. Instead, he resigned from Lhasa OMS on September 17, 2003, and went to work at Asiamed Professional. On September 18, 2003, one day after Mr. Joy left Lhasa OMS, Asiamed Professional, who is a competitor of Lhasa OMS and has no rights to the Lhasa OMS or OMS marks, registered the exact same Lhasa OMS domain names that Mr. Joy had represented to Mr. Riihimaki were owned by Lhasa OMS. The reasonable inference is that Mr. Joy failed to register the domain names in May 2003, so that he could bring them with him to Asiamed Professional. Irrespective of his motive, Mr. Joy and Asiamed Professional obtained the domain name registrations of and belonging to Lhasa OMS by false pretenses.

Asiamed Professional has no legitimate right to the domain names, and had absolutely no right to register the domain names, in the first instance. This was not

---

[2] Once a ".com" domain name is registered, the registrant also receives the ".net" and ".org" domain names.

{K0270884.1}

10

merely a computer error or good-faith mistake. Mr. Joy affirmatively failed to register the domain names, affirmatively told Mr. Riihimaki he had completed the registration, and now Asiamed Professional, a director competitor, owns the registrations. The bad-faith conduct of Mr. Joy is unconscionable. No further inquiry is required. Defendants must return the domain name registrations to Lhasa OMS, without delay.

2. <u>Asiamed is violating the Lanham Act</u>

The circumstances under which Asiamed Professional registered the domain names www.lhasaoms.com, www.lhasaoms.net, and www.lhasaoms.org establish a violation of the federal Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. 1125(d), which is part of the Lanham Act.

First, it is uncontroverted that Asiamed Professional registered domain names that incorporate the marks owned by the Plaintiffs.[3] Plaintiffs' marks are distinctive and were distinctive at the time that Asiamed Professional registered the domain names. Each of the marks "OMS", "LHASA", and "LHASA OMS" are or incorporate terms that are considered fanciful or arbitrary and are thus inherently distinctive. See 2J McCarthy on Trademarks and Unfair Competition §§ 11:4, 11-10 (2002). See also I. P. Lund Trading v. Kohler Co., 163 F. 3d 27, 39 (1st Cir. 1998).

Second, the domain names registered by Asiamed Professional are identical to the protected mark "LHASA OMS". The addition of the top-level domains ".com", ".org" and ".net" to the mark are inconsequential. See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F. 3d 1036, 1055 (9th Cir. 1999). In addition, a comparison of the domain names registered by Asiamed Professional to the marks

---

[3] There is no requirement that a trademark be registered in order to be a mark protected by the ACPA and the Lanham Act. 4 McCarthy on Trademarks and Unfair Competition, § 25:78, p. 25-261 (2002)

"LHASA" and "OMS" demonstrates that the marks are confusingly similar for purposes of the ACPA, because they bear such a resemblance that internet users would "reasonably assume the names were modified, used, approved, and/or permitted by" Lhasa OMS or OMS. Omega S.A.V. v. Omega Engineering, Inc., 228 F. Supp. 2d 112, 127 (D. Conn. 2001). See also Northern Light Technology, Inc. v. Northern Lights Club, et al., 97 F. Supp. 2d 96, 117 (D. Mass. 2000), aff'd, 36 F. 3d. 57 (1st Cir. 2001) (citations omitted).

Third, an application of the factors set forth in the ACPA compels the conclusion that Asiamed Professional has acted with bad faith intending to profit from the use of the Plaintiffs' marks.[4] Seven of the nine factors have direct bearing on the instant case and weigh in favor of a finding of bad faith on the part of Asiamed Professional.[5] One, Asiamed Professional does not have any intellectual property rights in any of the domain names. Two, the domain names do not contain the legal name of Asiamed Professional or any of the defendants. Three, Asiamed Professional has no prior use of the domain names in connection with the bona fide offering of any goods or services. Four, Asiamed Professional has not engaged in any bona fide noncommercial or fair use of the mark in any web-site. Five, Asiamed Professional has not maintained accurate contact information for its domain name registration, having failed to disclose the entity name change occurring on September 25, 2003. (Exhibit "I"). Six, Asiamed Professional, on September 18, 2003 and on September 29, 2003, registered multiple domain names that it knew were identical or confusingly similar to distinctive marks owned by the Plaintiffs. Seven, because the marks are distinctive, Asiamed Professional acted with a bad faith

---

[4] The terms "'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with "bad faith" in other contexts. Sporty's Farm, 202 F. 3d at 499.

intent to profit from the use of the Plaintiffs' marks.

The Court is not limited to the statutory factors identified in finding that Asiamed Professional violated the ACPA. Sporty's Farm, LLC v. Sportmans Market, Inc., 202 F. 3d 489, 499 (2nd Cir. 2000) (holding that unique circumstances of the case "which do not fit neatly into the specific factors enumerated by Congress ... may be considered under the statute"). In Sporty's Farm, the circumstances considered by the Court in finding bad faith to profit included a finding that the defendant planned to go into competition with the legitimate mark holder and "registered sportys.com for the primary purpose of keeping Sportsmans [the legitimate mark holder] from using the domain name." Id.

The same conclusion of bad faith is warranted here. Asiamed Professional knows, principally through Mr. Joy, that the web-site is the centerpiece of the Lhasa OMS marketing campaign. Since Asiamed Professional is not utilizing the names, the plain intent of Asiamed Professional is to frustrate its competitor and to prevent Lhasa OMS from operating a web-site using its own mark to enhance the business of Lhasa OMS. Asiamed Professional registered the marks with the knowledge that Lhasa OMS planned to use the use the as part of a promotional campaign and after Dr. Teichert threatened to harm Plaintiffs' business. But for Mr. Joy's fraud, Lhasa OMS would have registered the domain names in May of 2003, and the domain names would not have been available to Asiamed Professional in September. Asiamed Professional registered the domain names shortly after it hired Mr. Joy, suggesting that Asiamed Professional was aware of the circumstances that led to the domain names being available for registration.

In light of these facts, Asiamed Professional has no reasonable right to claim the

---

[5] It is not necessary that all factors are present to find bad faith with intent to profit. See Northern Light Technology, 236 F. 3d at 65.

{K0270884.1}

13

protection of the so-called "escape clause" of the ACPA. <u>Northern Light Technology</u>, 96 F. Supp. 2d at 70. That provision states that bad faith "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. §1125(d)(1)(B)(ii). Because the availability of the escape clause turns on the beliefs of Asiamed Professional, it bears the initial burden to demonstrate a basis for the application of the clause. <u>See</u> <u>Northern Light Technology</u>, 96 F. Supp. 2d at 70. <u>See also</u> 2J <u>McCarthy on Trademarks and Unfair Competition</u>, § 25:78, p. 25-266 (reasonable belief defense should be used "very sparingly and in the most unusual case"). Asiamed Professional can offer no credible basis to legitimize its registration of domain names.

Based upon Asiamed Professional's violation of the ACPA, the statute provides, *inter alia*, that this Court may order "the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. §1125(d)(1)(C). Transfer of the domain names to Lhasa OMS is essential to remedy the consequences of Asiamed Professional's bad faith conduct. Lhasa OMS will be deprived of the value of its promotional campaign and suffer damage to its goodwill as the thousands of customers to whom it has distributed promotional materials promising a new web-site in the fall of 2003 wait in vain for that web-site. Under these exceptional circumstances, immediate transfer of the domain names to Lhasa OMS, without further delay, is warranted.

  B. Mr. Joy Is Using Confidential and Proprietary Information of Lhasa OMS to Gain a Competitive Advantage for Asiamed Professional

Mr. Joy blatantly breached his duties owed to Plaintiffs by disclosing confidential and proprietary information to Plaintiffs' direct competitor, Asiamed Professional. "The

doctrine is well-settled that an employee cannot lawfully use for the advantage of a rival and to the harm of his employer confidential information which he has gained in the course of his employment." Aronson, et al. v. Orlov, et al., 228 Mass. 1, 5-6, (1917); see also New England Overall Co. v. Woltman, 343 Mass. 69, 77 (1961). The prohibition against taking or using confidential information gained during employment "rests upon the implied contract, growing out of the nature of the relation, that he employee will not after the termination of his service use information gained during the period of his employment to the detriment of his former employer." Aronson, 228 Mass. at 6. "The doctrine has been frequently applied in this Commonwealth and it prevails generally." Id. (internal citations omitted). See also Woolley's Laundry, Inc. v. Silva, 304 Mass. 383, 386-88 (1939). Consistent with this duty, a departing employee "may not carry away certain information, such as lists of customers." Augat, Inc. v. Aegis, Inc., 409 Mass. at 173. Significantly, this common law duty exists even where the employee has not signed a non-disclosure, confidentiality or non-compete agreement. See New England Overall, 343 Mass. at 77, 27, citing, Restatement (Second) of Agency, § 396.

In addition, G. L. c. 93, § 42 provides that it is unlawful to take from any corporation a trade secret. The statute incorporates the definition of "trade secret" contained in G. L. c. 266, § 30, which defines "trade secrets" as including, "any tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret, scientific technical, merchandising, production or management information, design, process, procedure, formula, invention, or improvement." The information about the strategic marketing and business development plans to which Mr. Joy was privy while employed as Senior Manager of Lhasa OMS qualifies as "trade

secrets" under § 42 subject to strict protection. See, e.g., Augat, 409 Mass. at 169-170 ("although general business information and routine data of a particular company normally is not protectable as confidential, . . . gross sales of a corporation might be protectable as confidential agreement and employer). Mr. Joy's misappropriation of the Plaintiffs' trade secrets for the befit of a competitor is unlawful, as a matter of law.

  C. Plaintiffs Have Suffered and Will Suffer Irreparable Harm Without the Requested Injunction

"In the trademark context, irreparable harm may be shown in the absence of actual injury to plaintiff's business based upon plaintiff's demonstration of a likelihood of success on the merits on its claim. The existence of irreparable harm <u>is even more insistent</u> given the likelihood of a violation of the Anticybersquatting Act." Northern Light Technology, 97 F. Supp. 2d at 78 (citations omitted)(emphasis added). Plaintiffs' likelihood of success on the merits on their trademark and ACPA claims alone warrants a finding of irreparable harm. This Court, however, need not rely on the statutory presumptions, because Lhasa OMS has demonstrated potential damage to its goodwill if it cannot provide the web-site that it has promised to clients and potential clients, as well as confusion in the marketplace.

Furthermore, Mr. Joy's sudden resignation on September 17, 2003 to join Dr. Teichert's entity, and his sudden disclosure that he had been contemplating leaving Lhasa OMS "for a while" leads to the inference that his failure to register the Lhasa OMS domain names was part of a larger, pre-mediated scheme with Asiamed Professional to harm the business of Lhasa OMS. Coupled with the statements of Dr. Teichert through June 2003 that he intended to destroy OMS in the United States acupuncture needle market, Mr. Joy's actions can be reasonably construed as part of a larger plan to gain an

unfair competitive advantage on Lhasa OMS and cause direct harm to its business. All of the new Lhasa OMS marketing materials sent to thousands of customers and prospective customers reference the new Lhasa OMS web-site at www.lhasaoms.com. Customers will be confused. Business will be diverted and lost.

Mr. Joy has also caused irreparable harm to Plaintiffs as a result of his deliberate misappropriation of confidential and proprietary business information, including but not limited to, product design and patent issues, confidential vendor ordering and pricing, and confidential product development and marketing strategies. Asiamed Professional is targeting the same vendors and same customers of Lhasa OMS and OMS, armed with the confidential information of Lhasa OMS and OMS that Mr. Joy learned while involved with the intricate details of the business. Plaintiffs trusted Mr. Joy, and entrusted him with its most sensitive business information. The confidential and proprietary business information Mr. Joy has about Lhasa OMS, if shared with Asiamed Professional, will substantially disadvantage the ongoing and prospective business of Lhasa OMS. Mr. Joy has knowledge about the operations of the business of Lhasa OMS and strategies for future business expansion. Mr. Joy has breached the trust. Mr. Joy's blatant misrepresentations that he registered the domain names for Lhasa OMS, only to have them registered by a competitor, erodes any credibility of Mr. Joy.

Mr. Joy and Asiamed Professional must be immediately enjoined from taking any further action to utilize the trademarks and trade secrets of Lhasa OMS on behalf of Asiamed Professional. Money damages are insufficient to repair the damage caused by the Defendants' deceitful and malicious conduct. It is impossible to quantify the damage Plaintiff is suffering to its business, reputation and customer relationships because of

Defendants' corporate sabotage and misappropriation and use of confidential information.

### D. The Balance of Harms Weighs in Favor of Granting Injunctive Relief

Lhasa OMS has invested tens of thousands of dollars and has expended other substantial resources in connection with its promotional campaign and web-site development. In contrast, Asiamed has expended only a modest amount of resources in registering the domain names. Consequently, "the significant resources spent by [Lhasa OMS] in developing and advertising its service and the relatively minor investment of the Defendants" favors the granting of the requested relief. See Northern Light Technology, 97 F. Supp. 2d at 78. Furthermore, without injunctive relief, Plaintiffs will have lost the benefit of the substantial resources expended over the years to build customer relationships and goodwill, maintain contact information, enter into distribution agreements, and plan new product development.

Conversely, the harm to Defendants should injunctive relief may be granted is relatively minor. Certainly, Defendants have no right to maintain possession and control over the domain names rightfully belonging to Plaintiffs, but for Mr. Joy's theft. Likewise, Defendants should not be rewarded for their attempt to sabotage Plaintiffs by being allowed to keep Plaintiffs' confidential information, brought by Mr. Joy, and to use it to gain an unfair advantage in the marketplace.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request this Court to enjoin and restrain Defendants Michael Joy, AM Holdings, and Asiamed Professional, consistent with the Proposed Order on Injunctive Relief, filed herewith.

Respectfully submitted,

**ORIENTAL MEDICAL SUPPLIES, INC. and LHASA OMS, INC.**

By Their Attorneys,

_____
Peter F. Carr, II (BBO# 600069)
Eugene R. Curry (BBO# 549239)
**ECKERT, SEAMANS, CHERIN & MELLOTT, LLC**
One International Place, 18th Floor
Boston, MA 02110
(617) 342-6800
(617) 342-6899 (Fax)

Dated: November 13, 2003